UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH RING MAC IDs 34:3E:A4:8F:B7:AB AND 34:3E:A4:8F:AC:EE, 200 CLEWLEYVILLE ROAD, EDDINGTON, MAINE, THAT IS STORED AT PREMISES CONTROLLED BY RING, LLC | No. 1:24-mj-00141-JCN<br><br>**FILED UNDER SEAL** |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT**

**Filed Under Seal Pursuant to Local Rule 157.6(a)**

I, Daniel Zaehringer, being duly sworn, depose and state as follows in support of a search warrant sought pursuant to Federal Rule of Criminal Procedure 41, Title 18, United States Code, Section 3103a, and Title 21, United States Code, Section 879:

**INTRODUCTION**

1. I am a Special Agent with the U.S. Department of Homeland Security ("DHS"), Homeland Security Investigations ("HSI"), assigned to the Office of the Resident Agent in Charge in Bangor, Maine. I have been employed by HSI since January 2010. Before that time, I served as a U.S. Customs and Border Protection Officer and a U.S. Border Patrol Agent. As an HSI Special Agent, I am authorized to investigate violations of the laws of the United States, and I have been involved with numerous criminal investigations involving violations of federal law, including those involving drug trafficking and related financial crimes. I am a law enforcement officer with authority to execute arrest and search warrants under the authority of the United States.

2. As an HSI Special Agent, I have participated in numerous arrest and seizure warrants involving a variety of offenses, including violations pertaining to drug and financial crimes investigations. I have also drafted and executed numerous warrants

1

for residences, cellular devices, and online accounts to search for and seize physical and digital evidence. Specific to digital evidence, based on my training and experience, I am familiar with how drug trafficking enterprises and individuals associated with them utilize residences, media, and on-line accounts in furtherance of such operations, including through the use of personal home surveillance equipment.

3. This affidavit is submitted in support of an application for a search warrant for information associated with Ring Video Doorbell devices with media access control ("MAC")[1] IDs 34:3E:A4:8F:B7:AB and 34:3E:A4:8F:AC:EE, that are stored at premises controlled by Ring, LLC, ("Ring"), a home security products company owned by Amazon.com, Inc. and headquartered in Santa Monica, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A), to require Ring to disclose to the Government records and other information in its possession, including video content, pertaining to Ring Video Doorbell devices with MAC ID 34:3E:A4:8F:B7:AB and 34:3E:A4:8F:AC:EE. These devices were located and identified by Penobscot County Sheriff's Office ("PCSO") personnel during their execution of a lawfully issued state court search warrant on the premises of 200 Clewleyville Road, Eddington, Maine, on April 10, 2024.

4. I assisted the PCSO in a support capacity in connection with the execution of the search warrant at 200 Clewleyville Road in Eddington. During the execution of the warrant at 200 Clewleyville Road in Eddington, two Ring Video Doorbell devices

---

[1] I know from my review of Ring's law enforcement guidelines and personal experience that the MAC ID for Ring doorbells and security cameras can be found on the back of such devices.

2

with MAC IDs 34:3E:A4:8F:B7:AB and 34:3E:A4:8F:AC:EE were located, and photographs of the devices appear below:

 

The Ring Video Doorbell with MAC ID 34:3E:A4:8F:B7:AB was located near the front entrance of the residence, and it appeared to be active. The Ring Video Doorbell with MAC ID 34:3E:A4:8F:AC:EE was in the garage, and it appeared to be active.

5. The instant search warrant is sought for evidence of violations of Title 21, United States Code, Section 856 (Drug-Involved Premises) and Title 18, United States Code, Sections 1956-57 (Money Laundering). The applied-for warrant would authorize the search and seizure of information, including video content, associated with the Ring Video Doorbell devices, as more particularly described in Attachment B.

6. The facts set forth in this affidavit are based on my personal knowledge, information obtained during my participation in this investigation, information from others, including law enforcement officers, my review of documents and records related to this investigation, and information gained through my training and experience, all of

3

which I believe to be reliable. Therefore, I submit that probable cause exists to search the information described in Attachment A for evidence further described in Attachment B. My affidavit is intended to provide the facts necessary for a determination of probable cause for the requested search warrant.

7. The information sought to be searched and seized concerns the relevant time frame of October 1, 2023, through April 10, 2024.

## JURISDICTION

8. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).

9. Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## GENERAL BACKGROUND CONCERNING RING

10. From my review of publicly available information provided by Ring about its services, including Ring's "Privacy Notice," "Terms of Service," and "Law Enforcement Guidelines," as well as Ring's product description, I am aware of the following about Ring and about the information collected and retained by Ring:

   a. Ring offers a variety of smart home security devices, including Ring Video Doorbells, Ring Security Cameras, Ring Alarm Security Systems, and Ring Smart Lighting.

   b. Ring's services enable customers to review, share, and save videos and photos captured by a Ring device and to access such content on a smart phone or other smart device such as a tablet.

4

c. During the set-up process for a Ring product, customers may create a Ring account to manage Ring devices and access content. When creating a Ring account, customers are asked to provide certain information about themselves, including their first and last names and email addresses.

d. For certain Ring products, including Ring Video Doorbells, after setting up a Ring account, the account owner can control and configure Ring devices, view and share videos, change account information, receive and control notifications, and add shared users, among other things.

e. Ring Video Doorbells feature a built-in camera and Two-Way Talk, so individuals can hear and speak to whomever is at their door through their Ring app. The Ring Video Doorbell can also send notifications to the account owner's smart device. With a Ring Protect subscription plan, account owners can view past recordings of events captured by the Ring Video Doorbell.

f. Ring offers three different subscription plans (Basic, Plus, and Pro), all of which enable video content to be retained for up to 180 days, as well as for the capturing of "snapshots" taken from the device. Recorded videos are from every motion event and every event live viewed by the user via the device. Ring's "snapshot capture feature" enables customers to see what is happening in between motion-activated events with recurring photo snapshots taken throughout the day.

g. Ring collects content and related information that is captured and recorded when its products and services are used, such as video or audio recordings, live video or audio streams, and images.

    h.    Ring videos are stored temporarily in the cloud for up to 180 days. Snapshot photos can be stored for up to 14 days in the cloud.

    i.    Ring has access to videos captured by a Ring device only if the user has a current Ring Protect subscription, as detailed above. The subscription enables customers to set the retention period for their Ring device video recordings. Ring retains such videos in accordance with the retention period set by the customer.

    j.    Ring Protect plan subscribers can customize their video storage time through the Ring app or Ring.com and adjust the storage time to shorter or longer periods. New devices with a Ring Protect subscription or trial will default to 60 days and devices that are set up with a new owner will default to 60 days of video storage time.

    k.    Video storage time does not impact the snapshot capture feature. Snapshot captures are not videos and have their own storage time in the cloud of 7 days with the Ring Protect Basic subscription plan.

## **PROBABLE CAUSE**

11. HSI, in coordination with the Federal Bureau of Investigation ("FBI") and Drug Enforcement Administration ("DEA"), is investigating individuals, entities, and premises involved in a suspected large-scale coordinated series of illegal marijuana grows involving approximately 180 properties in the state of Maine, primarily located throughout Somerset, Kennebec, Piscataquis, and Penobscot Counties. The drug-involved premises at issue are believed to operate in violation of 21 U.S.C. § 856(a), in addition to illegally cultivating for distribution marijuana in violation of 21 U.S.C. § 841(a)(1). All such premises under investigation have been confirmed by the Maine

Office of Cannabis Policy as lacking any licensed status under which marijuana could be legally cultivated under state law. Associated individuals are suspected of conducting domestic money laundering transactions in violation of 18 U.S.C. § 1956(a)(1), sourced by and through proceeds derived from the specified unlawful activity of illegal marijuana cultivation, and relatedly, conducting monetary transactions in criminally derived property in amounts greater than $10,000 in violation of 18 U.S.C. § 1957.

12. Among the premises suspected by HSI, FBI, and DEA of maintaining illegal marijuana grows, the investigation identified a residential property located at 200 Clewleyville Road in Eddington, Maine.

13. The DEA issued administrative subpoenas to Versant Power seeking electrical usage and billing data for 200 Clewleyville Road in Eddington. In response, Versant Power provided records showing that two accounts existed for 200 Clewleyville Road in Eddington: one account was for the main residence and the other account was for the detached garage (with a purported apartment). Versant Power records listed Yongliang Deng as the customer for both accounts.

14. Versant Power also provided the following usage and billing information for the main residence from April 2021 through February 2024:

### Usage History - 200 Clewleyville Road - House - April 2, 2021 - Present

| Date | Days | Read Type | Reading | Usage | Billed $ | Tax $ | Avg Daily Usage | Serial No | Register Type |
|---|---|---|---|---|---|---|---|---|---|
| Mar-12-2024 | 28 | RR | 13188 | 3956 | 1078.23 | 48.06 | 141.29 | 8103123 | KWH |
| Feb-13-2024 | 15 | RR | 9232 | 9232 | 6728.15 | 358.81 | 615.47 | 8103123 | KWH |
| Jan-29-2024 |  | SET | 0 |  |  |  |  | 8103123 | KWH |
| Jan-29-2024 | 14 | PULL | 23231 | 15453 |  | 358.81 | 1103.79 | 7101240 | KWH |
| Jan-15-2024 | 33 | RR | 7778 | 32172 | 9300.17 | 499.59 | 974.91 | 7101240 | KWH |
| Dec-13-2023 | 30 | RR | 75606 | 25729 | 7791.77 | 416.05 | 857.63 | 7101240 | KWH |
| Nov-13-2023 | 29 | RR | 49877 | 30785 | 9322.94 | 500.27 | 1061.55 | 7101240 | KWH |
| Oct-15-2023 | 31 | RR | 19092 | 25129 | 7610.07 | 406.06 | 810.61 | 7101240 | KWH |
| Sep-14-2023 | 31 | RR | 93963 | 19830 | 6005.33 | 317.8 | 639.68 | 7101240 | KWH |
| Aug-14-2023 | 29 | RR | 74133 | 28738 | 8703.01 | 466.17 | 990.97 | 7101240 | KWH |
| Jul-16-2023 | 32 | RR | 45395 | 29302 | 8654.5 | 463.81 | 915.69 | 7101240 | KWH |
| Jun-14-2023 | 31 | RR | 16093 | 21364 | 5963.12 | 316.46 | 689.16 | 7101240 | KWH |
| May-14-2023 | 31 | RR | 94729 | 25082 | 7000.88 | 373.53 | 809.1 | 7101240 | KWH |
| Apr-13-2023 | 30 | RR | 69647 | 20895 | 5832.21 | 309.26 | 696.5 | 7101240 | KWH |
| Mar-14-2023 | 29 | RR | 48752 | 25050 | 6991.96 | 373.04 | 863.79 | 7101240 | KWH |
| Feb-13-2023 | 28 | RR | 23702 | 23340 | 6514.67 | 346.79 | 833.57 | 7101240 | KWH |
| Jan-16-2023 | 35 | RR | 362 | 30922 | 7799.02 | 416.81 | 883.49 | 7101240 | KWH |
| Dec-12-2022 | 29 | RR | 69440 | 20138 | 4622.88 | 244.79 | 694.41 | 7101240 | KWH |
| Nov-13-2022 | 31 | RR | 49302 | 13390 | 3073.81 | 159.59 | 431.94 | 7101240 | KWH |
| Oct-13-2022 | 29 | RR | 35912 | 5153 | 1182.94 | 55.59 | 177.69 | 7101240 | KWH |
| Sep-14-2022 | 31 | RR | 30759 | 841 | 193.05 | 1.14 | 27.13 | 7101240 | KWH |
| Aug-14-2022 | 31 | RR | 29918 | 1240 | 284.65 | 6.19 | 40 | 7101240 | KWH |
| Jul-14-2022 | 23 | RR | 28678 | 109 | 25.44 | 0 | 4.74 | 7101240 | KWH |
| Jun-21-2022 | 38 | RR | 28569 | 135 | 32.32 | 0 | 3.55 | 7101240 | KWH |
| May-14-2022 | 31 | RR | 28434 | 487 | 116.6 | 0 | 15.71 | 7101240 | KWH |
| Apr-13-2022 | 30 | RR | 27947 | 1623 | 388.61 | 11.5 | 54.1 | 7101240 | KWH |
| Mar-14-2022 | 29 | RR | 26324 | 1453 | 347.9 | 9.26 | 50.1 | 7101240 | KWH |
| Feb-13-2022 | 25 | RR | 24871 | 12334 | 2953.25 | 154.19 | 493.36 | 7101240 | KWH |
| Jan-19-2022 | 6 | RR | 12537 | 5535 | 6483.7 | 346.08 | 922.5 | 7101240 | KWH |
| Jan-13-2022 | 31 | RR | 7002 | 24929 |  | 346.08 | 804.16 | 7101240 | KWH |
| Dec-13-2021 | 32 | RR | 82073 | 23470 | 4305.33 | 229.23 | 733.44 | 7101240 | KWH |
| Nov-11-2021 | 30 | RR | 58603 | 26601 | 4692.01 | 250.79 | 886.7 | 7101240 | KWH |
| Oct-12-2021 | 28 | RR | 32002 | 22994 | 3961.88 | 210.79 | 821.21 | 7101240 | KWH |
| Sep-14-2021 | 30 | RR | 9008 | 28946 | 4987.4 | 267.2 | 964.87 | 7101240 | KWH |
| Aug-15-2021 | 31 | RR | 80062 | 22385 | 3856.94 | 205.03 | 722.1 | 7101240 | KWH |
| Jul-15-2021 | 31 | RR | 57677 | 6416 | 1097.29 | 53.3 | 206.97 | 7101240 | KWH |
| Jun-14-2021 | 32 | RR | 51261 | 972 | 165.08 | 2.08 | 30.38 | 7101240 | KWH |
| May-13-2021 | 31 | RR | 50289 | 818 | 138.92 | 0.63 | 26.39 | 7101240 | KWH |
| Apr-12-2021 | 10 | RR | 49471 | 84 | 14.26 | 0 | 8.4 | 7101240 | KWH |
| Apr-02-2021 |  | CUTON | 49387 | 0 |  |  |  | 7101240 | KWH |

8

15. Versant Power provided the following usage and billing information for detached garage (apartment) from May 2021 through February 2024:

## Usage History - 200 Clewleyville Road, Apt. - May 6, 2021 - Present

| Date | Days | Read Type | Reading | Usage | Billed $ | Tax $ | Avg Daily U | Serial No | Register Type |
|---|---|---|---|---|---|---|---|---|---|
| Mar-12-2024 | 28 | RR | 8259 | 873 | 237.95 | 1.85 | 31.18 | 8103121 | KWH |
| Feb-13-2024 | 15 | RR | 7386 | 7386 | 4021.63 | 209.94 | 492.4 | 8103121 | KWH |
| Jan-29-2024 | | SET | 0 | | | | | 8103121 | KWH |
| Jan-29-2024 | 14 | PULL | 95915 | 7369 | | 209.94 | 526.36 | 7147180 | KWH |
| Jan-15-2024 | 33 | RR | 88546 | 15651 | 4524.34 | 236.92 | 474.27 | 7147180 | KWH |
| Dec-13-2023 | 30 | RR | 72895 | 8568 | 2594.74 | 130.22 | 285.6 | 7147180 | KWH |
| Nov-13-2023 | 29 | RR | 64327 | 14249 | 4315.17 | 224.84 | 491.34 | 7147180 | KWH |
| Oct-15-2023 | 31 | RR | 50078 | 16374 | 4958.7 | 260.23 | 528.19 | 7147180 | KWH |
| Sep-14-2023 | 31 | RR | 33704 | 8939 | 2707.09 | 136.4 | 288.35 | 7147180 | KWH |
| Aug-14-2023 | 29 | RR | 24765 | 11202 | 3392.4 | 174.09 | 386.28 | 7147180 | KWH |
| Jul-16-2023 | 32 | RR | 13563 | 14873 | 4392.82 | 229.42 | 464.78 | 7147180 | KWH |
| Jun-14-2023 | 31 | RR | 98690 | 9026 | 2519.33 | 127.05 | 291.16 | 7147180 | KWH |
| May-14-2023 | 31 | RR | 89664 | 6125 | 1709.61 | 82.51 | 197.58 | 7147180 | KWH |
| Apr-13-2023 | 30 | RR | 83539 | 5949 | 1660.49 | 79.81 | 198.3 | 7147180 | KWH |
| Mar-14-2023 | 29 | RR | 77590 | 6327 | 1765.99 | 85.61 | 218.17 | 7147180 | KWH |
| Feb-13-2023 | 28 | RR | 71263 | 1321 | 368.72 | 8.76 | 47.18 | 7147180 | KWH |
| Jan-16-2023 | 38 | RR | 69942 | 584 | 146.25 | 0 | 15.37 | 7147180 | KWH |
| Dec-09-2022 | 26 | RR | 69358 | 535 | 122.81 | 0 | 20.58 | 7147180 | KWH |
| Nov-13-2022 | 31 | RR | 68823 | 161 | 36.95 | 0 | 5.19 | 7147180 | KWH |
| Oct-13-2022 | 29 | RR | 68662 | 43 | 13.66 | 0 | 1.48 | 7147180 | KWH |
| Sep-14-2022 | 31 | RR | 68619 | 103 | 23.65 | 0 | 3.32 | 7147180 | KWH |
| Aug-14-2022 | 31 | RR | 68516 | 102 | 23.4 | 0 | 3.29 | 7147180 | KWH |
| Jul-14-2022 | 30 | RR | 68414 | 112 | 26.3 | 0 | 3.73 | 7147180 | KWH |
| Jun-14-2022 | 31 | RR | 68302 | 62 | 17.71 | 0 | 2 | 7147180 | KWH |
| May-14-2022 | 31 | RR | 68240 | 63 | 17.88 | 0 | 2.03 | 7147180 | KWH |
| Apr-13-2022 | 30 | RR | 68177 | 555 | 132.89 | 0 | 18.5 | 7147180 | KWH |
| Mar-14-2022 | 29 | RR | 67622 | 648 | 155.16 | 0 | 22.34 | 7147180 | KWH |
| Feb-13-2022 | 31 | RR | 66974 | 8834 | 2115.21 | 106.46 | 284.97 | 7147180 | KWH |
| Jan-13-2022 | 31 | RR | 58140 | 12625 | 2612.42 | 135.15 | 407.26 | 7147180 | KWH |
| Dec-13-2021 | 32 | RR | 45515 | 13001 | 2384.9 | 123.6 | 406.28 | 7147180 | KWH |
| Nov-11-2021 | 30 | RR | 32514 | 14177 | 2500.61 | 130.26 | 472.57 | 7147180 | KWH |
| Oct-12-2021 | 28 | RR | 18337 | 8745 | 1506.76 | 75.77 | 312.32 | 7147180 | KWH |
| Sep-14-2021 | 30 | RR | 9592 | 7093 | 1222.12 | 60.11 | 236.43 | 7147180 | KWH |
| Aug-15-2021 | 31 | RR | 2499 | 2203 | 379.57 | 13.77 | 71.06 | 7147180 | KWH |
| Jul-15-2021 | 31 | RR | 296 | 177 | 30.27 | 0 | 5.71 | 7147180 | KWH |
| Jun-14-2021 | 32 | RR | 119 | 104 | 17.67 | 0 | 3.25 | 7147180 | KWH |
| May-13-2021 | 7 | RR | 15 | 15 | 3.05 | 0 | 2.14 | 7147180 | KWH |
| May-06-2021 | | CUTON | 0 | 0 | | | | 7147180 | KWH |

16. I know based on my training and experience that large amounts of electrical power are needed in support of indoor marijuana cultivation, due to the use of artificial lighting, heat pumps, distribution fans, air conditioners and humidifiers. The electrical consumption at 200 Clewleyville Road in Eddington is consistent with large-scale illegal marijuana cultivation.

17. In addition to power usage information, Versant Power provided notes or account history information regarding the main residence located at 200 Clewleyville Road in Eddington, some of which appear below:

   a. On April 2, 2021, Yongliang called to request service at 200 Clewleyville Road.

   b. On May 28, 2021, it was recorded that there was an outage on the property on May 27, and that the "[c]ustomer has a grow and added stuff to his house and blew the transformer." It was further documented that a crew would be going out on May 28 "to put up a 50kva and run a 1/O service."

   c. In September 2021, Versant Power records state: "HIGH USAGE—GROW OPERATION—ADDED HIGH BILL THRESHOLD $5000.00….OVERRIDE BCT FOR BILLING."

   d. In January 2022, Versant Power records state: "HIGH USAGE—GROW OPERATION—HAD TO UP THE HIGH BILL THRESHOLD FROM $5000.00 TO $6000.00….OVERRIDE BCT FOR BILLING."

   e. In April 2022, Versant Power records indicate that "Deng called," and his "SSI and address" were verified. It was documented that the "female tenant states [she] lost power."

18. Versant Power provided notes or account history information regarding the detached garage (with a purported apartment) located at 200 Clewleyville Road in Eddington, some of which appear below:

   a. On April 27, 2021, Yongliang spoke with Versant Power representatives about reattaching a meter to the detached garage and other services to have power for the garage. The notes indicate that the detached garage was reported to have an apartment on the second floor.

   b. On October 18, 2023, Versant Power records indicate that the usage amount was reviewed and that: "THE CUSTOMER HAS HIGH USAGE PLACED BCT ON OVERRIDE."

19. Based on my training and experience, the records provided by Versant Power show that the power usage for 200 Clewleyville Road in Eddington is similar to the power usage of large-scale marijuana operations.

20. I have further reviewed publicly available real property records concerning the acquisition and ownership of 200 Clewleyville Road in Eddington, Maine.

21. The warranty deed for the property recorded with the Penobscot County Register of Deeds shows that on December 30, 2020, the real property located at 200 Clewleyville Road, Eddington, Maine, was granted to Yongliang Deng, of 76-08 Rockaway Boulevard, Woodhaven, New York 11421. My review of publicly available records show that Deng purchased the property for $214,000, which was financed in part by a mortgage in the amount of $171,200 through Kennebec Savings Bank.

22. I have reviewed publicly available tax records associated with 200 Clewleyville Road in Eddington, and those records show that Yongliang Deng is the owner of that property.

23. In connection with the federal investigation, I have worked in collaboration with state and local law enforcement, including the Penobscot County Sheriff's Office ("PCSO"). Through my communications with state and local law enforcement, I learned that the PCSO was investigating illegal marijuana cultivation at 200 Clewleyville Road in Eddington.

24. I have spoken with PCSO Detective Sergeant Dayerrick Ireland and reviewed a state search warrant that the PCSO obtained on April 3, 2024, to search the property located at 200 Clewleyville Road in Eddington. From my review of that warrant and conversations, I obtained the following information:

   a. On November 1, 2023, PCSO Deputy Dillon observed three vehicles in the driveway of 200 Clewleyville Road, and those vehicles were: (1) a vehicle with a New York registration plate (LFC3152), registered to Jianhua Chen, DOB xx/xx/1989; (2) a vehicle with a Maine registration plate (8022ZB), registered to Zwen Chen, DOB xx/xx/1980; and (3) a vehicle with a New York registration plate, registered to Li Dongliang, DOB xx/xx/1986.

   b. On November 8, 2023, PCSO Deputy Dillon detected an odor of marijuana emanating from the property of 200 Clewleyville Road on a windy day. That same day, Deputy Dillon observed that there were several cameras surrounding the property, there were electrical wires leading to the garage, and all of the windows were covered up.

   c. In the state search warrant, Detective Sergeant Ireland averred that blocking external light from entering the residence (such as by covering up windows) and using the correct duration of light is essential to marijuana cultivation, especially during the flowering period.

    d. On November 13, 2023, Deputy Dillon met with an individual who lives approximately 0.1 miles from 200 Clewleyville Road in Eddington. This individual told Deputy Dillon that he believes there is a marijuana operation at 200 Clewleyville Road, and that there has been a "strong odor" that is "skunk-like"[2] almost every morning.

    e. On March 29, 2024, Detective Sergeant Ireland spoke with an investigator with the Office of Cannabis Policy for the State of Maine. The investigator advised that 200 Clewleyville Road in Eddington was not registered with the Maine Medical Program or the Maine Recreational Use Program.

    f. According to the State of Maine Governor's Energy Office, the average Maine residential household uses 550 kilowatt hours (kWh) monthly. Further, the average monthly power usage bill in the State of Maine is $150.

25. On April 1, 2024, Detective Sergeant Ireland drove to 200 Clewleyville Road in Eddington. While driving near the property, he saw that all of the windows of the main residence and the detached garage were covered up. On the back side of the property, Detective Sergeant Ireland saw discarded potting soil and plastic pot plants. He also observed materials for irrigation in front of the residence and an upgraded power supply connected to the primary residence. He did not detect the odor of marijuana coming from the property that day.

26. On April 3, 2024, Detective Sergeant Ireland obtained a state search warrant for 200 Clewleyville Road in Eddington. The state search warrant authorized

---

[2] Based on my training and experience, I know that marijuana is often referred to as smelling skunk-like.

law enforcement to search the property and seize evidence of scheduled drugs, including marijuana plants and processed marijuana, as well as evidence demonstrating identity, possession, dominion, custody, or control by any and all individuals on or in the premises, among other things.

27. On April 10, 2024, I attended the execution of the state search warrant by the PCSO and other state and local law enforcement in a support capacity.

28. As a result of the search warrant executed by the PCSO at 200 Clewleyville Road in Eddington, a total of approximately 555 marijuana plants were discovered inside the residence. Based on my training and experience, the plants smelled of and appeared to be marijuana. Some photographs of the marijuana plants and grow operation appear below:




 

Also, law enforcement seized several packages of sealed clear bags which contained what appeared to be marijuana. A photograph of one of the packages appears below:



Throughout both the house and the garage, there was electrical wiring that was exposed. In the house and the garage, there were containers that were filled and had tubes leading out that appeared to be used to irrigate the marijuana plants.

29.     Based on my training and experience, I know that individuals involved in indoor illegal marijuana grow operations cover up windows of buildings for several reasons, including to avoid detection and to ensure that external light does not impact the cultivation of marijuana plants. On April 10, 2024, when the warrant was executed, the windows of the residence and the garage were both covered in areas where the marijuana was being cultivated at the property.

30.     During a search of the residence of 200 Clewleyville Road in Eddington, law enforcement found a Ring Video Doorbell with MAC ID 34:3E:A4:8F:B7:AB. This device was located near the front entrance of the residence, and it appeared to be active. Law enforcement also found another Ring Video Doorbell with MAC ID 34:3E:A4:8F:AC:EE in the garage, and it also appeared to be active.

31.     Law enforcement also located mail addressed to Yongliang Deng (as well as others) inside the residence, including mail to Yongliang Deng from Versant Power.

32.     Based on the foregoing facts, there is probable cause to believe that evidence of violations of 21 U.S.C. § 856 (Drug-Involved Premises) and 18 U.S.C. §§ 1956-57 (Money Laundering) exists as information available to be searched and seized.

33.     As detailed above, information stored in connection with the subject Ring account or accounts may provide evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the Government to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, captured video and audio contents, images, comments, and other data collected by products about the surrounding environment can be evidence of who was present at a particular physical location at a relevant time.

16

This geographic and timeline information may tend to either inculpate or exculpate those connected to the crime.

34. Based on the information above, Ring's servers are likely to contain the types of material described above, including stored video and audio content and information concerning the use of Ring Video Doorbell devices with MAC IDs 34:3E:A4:8F:B7:AB and 34:3E:A4:8F:AC:EE, at 200 Clewleyville Road in Eddington, Maine. In my training and experience, such information may constitute evidence of the crimes under investigation.

35. For example, the subject Ring devices were located at a premises actively engaged in large-scale illegal marijuana cultivation. I know from my training and experience, as well as from information provided to me by other experienced federal and state drug investigators, that such extensive marijuana cultivation operations are complex and often require outside coordination provided by multiple involved individuals, rather than a single grower.

36. Therefore, the grow operation at 200 Clewleyville Road in Eddington, likely required outside coordination and communication with other participants or co-conspirators, including those associated with other possible illegal marijuana grows in central Maine. I believe that stored video and audio content and information associated with the Ring devices will show the identities and conduct of participants or co-conspirators concerning the illegal grow operations.

37. Specifically, the illegal grow operations at issue required labor, supplies, and transportation in connection with the cultivation, harvesting, processing, and distribution of the marijuana. I believe that stored video and audio content and information associated with the Ring devices will show such activities. In particular, I

17

believe that such content will show either video recordings or still photo captures of the participants in the illegal activity, potentially including Yongliang Deng (the owner and power records subscriber), and other associated employees, agents, laborers, and individuals known and unknown.

38. Finally, given the for-profit nature of illegal marijuana cultivation, and the likelihood that illicit proceeds were generated from such activities, I believe that stored video and audio content and information associated with the Ring devices relevant to the monetary proceeds of the marijuana enterprise may also be present and subject to search and seizure.

## CONCLUSION

39. Based on the foregoing, there is probable cause to believe that the federal criminal statutes cited herein have been violated, and that evidence of such crimes, more fully described in Attachment B, are located in the information described in Attachment A. I respectfully request that this Court issue a search warrant for the information described in Attachment A, authorizing the seizure and search of the items described in Attachment B.

40. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular Title 18, United States Code, Sections 2703(a), (b)(1)(A), and (c)(1)(A), by using the warrant to require Ring to disclose to the Government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, Government-authorized persons will review that information to locate the items described in Section II of Attachment B.

41. Following execution of the state search warrant by the PCSO, the U.S. Attorney's Office for the District of Maine submitted a preservation request to Ring for Ring Video Doorbell device with MAC ID 34:3E:A4:8F:B7:AB, which assigned Amazon Reference Number CRIM 1322285 2024 DS. According to publicly available information from Ring's website, upon receipt of a lawful and binding request on April 10, 2024, Ring will preserve the requested information for up to 90 days. *See* https://ring.com/support/articles/oi8t6/Learn-About-Ring-Law-Enforcement-Guidelines. On April 24, 2024, the U.S. Attorney's Office submitted a preservation request to Ring for Ring Video Doorbell device with MAC ID 34:3E:A4:8F:AC:EE, which assigned Amazon Reference Number CRIM 1325343 2024 DS.

42. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The Government will execute this warrant by serving it on Ring. Because the warrant will be served on Ring, who will then compile the requested records at a time convenient to it, and then be reviewed by Government-authorized persons, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

Daniel Zaehringer
HSI Special Agent

Sworn to telephonically and signed electronically in accordance with the requirements of Rule 4.1 of the Federal Rules of Criminal Procedure

Date: May 03 2024

City and state: Bangor, ME

Judge's signature

John C Nivison U.S. Magistrate Judge
Printed name and title